*In re* JILL SHARP *et al.*—(SUE SHARP ELLIOTT, Petitioner-Appellee, *v.* STEPHEN EUGENE SHARP, Respondent-Appellant.)

Third District   No. 78-171

Opinion filed November 20, 1978.

946

Lindholm & Williamson, of Peoria, for appellant.

Glenn J. Church, of Glenn J. Church, Ltd., of Peoria, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The parties to this appeal are Stephen Eugene Sharp, appellant-respondent, and Sue Sharp Elliott, appellee-petitioner. The parties were divorced in the circuit court of Sangamon County on April 14, 1964, at which time the appellee-petitioner was given permanent custody of the parties' minor children, Jill and Brenda, and awarded the sum of $150 per month for their support. Thereafter, the award of child support was modified on two occasions, each time increasing the liability of appellant-respondent. On the latter occasion, February 5, 1975, the circuit court of Peoria County entered an order modifying the child support payments and dismissed "with prejudice" a claim for higher education expenses of both daughters.

The proceeding that led to this appeal was initiated by the appellee-petitioner filing a petition for an increase in child support and for post-high-school education expenses of daughter Jill. Said petition was filed December 12, 1977, and on March 27, 1978, the trial court entered the order increasing again the support liability of appellant-respondent and allowing payment of appellee-petitioner's attorney fees by appellant-respondent. Notice of appeal was filed and thereafter the circuit court

ordered additional payment of appellee-petitioner's attorney fees, thereby granting a portion of the award petitioned for.

The appellant-respondent alleges four different grounds for error in pursuing this appeal. The first issue is whether the claims for post-high-school educational expenses for both daughters were rendered res judicata by reason of a prior order of the court. In a modification decree of February 5, 1975, by the circuit court of Peoria County, a request to pay the higher education expenses of both minor daughters, Jill and Brenda, was dismissed "with prejudice." Appellant-respondent contends that this dismissal "with prejudice" renders the issue of his responsibility for education expenses res judicata. The child support responsibilities of parenthood are not so easily avoided.

■■■ In Illinois, "[a]limony and child support are continuing obligations subject to change as the conditions and circumstances of the parties warrant." (*In re Fisher* (1958), 15 Ill. 2d 139, 151, 153 N.E.2d 832.) The policy of the courts has been, in light of the *Fisher* decision, that in an application for modification or termination of support the only inquiry should be whether sufficient cause has intervened since the entry of the decree to authorize the court to change the allowance. (*Swanson v. Swanson* (1977), 51 Ill. App. 3d 999, 367 N.E.2d 512.) When determining whether there is sufficient cause, courts consider both the circumstances of the parents and the circumstances of the children. (*Sullivan v. Sullivan* (1978), 57 Ill. App. 3d 958, 373 N.E.2d 829.) Only if these circumstances have changed since the time of the original decree is it proper for the court to order a modification of child support. The original decree awarding child support payments is res judicata so long as there is no change in the circumstances underlying the decree. (*Nordstrom v. Nordstrom* (1976), 36 Ill. App. 3d 181, 343 N.E.2d 640.) New or changed conditions are necessary to warrant a change in support payments. (*Sullivan v. Sullivan.*) And further, those new or changed circumstances must be material or substantial. *Sullivan v. Sullivan.*

■■ The threshold requirement that must be met before the court can award a modification of child support is a showing that material or substantial changes have occurred since the original decree was rendered. The judgment embodied in the original decree is not res judicata if the petitioning party presents proof of changed conditions, regardless of the recital of the phrase "with prejudice" in the previous order. A court may not foreclose in advance the future consideration of matters pertaining to the welfare of children of divorced parents. The power of the court to modify judgments as to child support is expressly granted by the legislature and regulated by statute. (Ill. Rev. Stat. 1977, ch. 40, par. 510.) "A court, when dealing with such matters, is exercising powers granted by the legislature and cannot * * * divest itself of the power to modify

contrary to the legislative will." (*Kaiser v. Kaiser* (1941), 310 Ill. App. 390, 34 N.E.2d 127 (abstract).) The trial court did not err in refusing to hold that the claim for support payments was res judicata.

Appellant-respondent next contends that the trial court abused its discretion in awarding increased child support, educational and medical expenses, and by failing to take into consideration the income of the appellee-petitioner's second husband. It is helpful here to review the standard which the trial court is to employ in the exercise of its discretion. Only after examining the position taken by this court in regard to changed circumstances, and what will constitute changed circumstances, can we determine whether the trial court abused its discretion in awarding increased support.

We first faced the issue with the case of *Kelleher v. Kelleher* (1966), 67 Ill. App. 2d 410, 414, 214 N.E.2d 139, 141. At that time we said, "The issue on a hearing for a petition to modify a divorce decree * * * is whether there have been material changes in the circumstances of the parties since the entry of the divorce decree. An increase in monthly support payments is warranted when the evidence establishes that the needs of the children increased, and the means of the father have also increased so as to enable him to contribute additional sums to his children's support." The *Kelleher* test is in the conjunctive, and the language of the decision is so unambiguous as to foreclose any argument that the conjunctive "and" was used inadvertently for the disjunctive "or." Under *Kelleher* the petitioner must show *both* an increased need *and* a corresponding increased ability to pay before the court can modify a judgment ordering child support.[1] The *Kelleher* authority commanded unwavering adherence for more than 10 years. *Grinton v. Grinton* (1970), 131 Ill. App. 2d 684, 264 N.E.2d 845; *Page v. Page* (1975), 30 Ill. App. 3d 514, 334 N.E.2d 212; *Daniels v. Daniels* (1976), 38 Ill. App. 3d 697, 348 N.E.2d 259; *Cross v. Cross* (1977), 48 Ill. App. 3d 1055, 363 N.E.2d 933.

The 1977 term of court witnessed a shift in focus from the rigid language of *Kelleher* to the more flexible standard of *Swanson v. Swanson* (1977), 51 Ill. App. 3d 999, 1000, 367 N.E.2d 512, 513. In *Swanson*, Justice Barry wrote that "child support is to be determined 'by accommodating the needs of the children with the available means of the parties'." Furthermore, the "increased needs of the children [could] be presumed from the facts that the children [had] grown older and the cost of living [had] risen* * *." (*Swanson v. Swanson* (1977), 51 Ill. App. 3d 999, 1001, 367 N.E.2d 512, 513.) Although the court in *Swanson* was divided, there

---

[1] We note that the *Kelleher* case and its progeny set the standard for modifying child support awards upward. A different standard has been applied when the petitioning party seeks to decrease support payments. *Koivun v. Koivun* (1977), 45 Ill. App. 3d 39, 359 N.E.2d 215; *Glass v. Peitchel* (1976), 42 Ill. App. 3d 240, 355 N.E.2d 750; *Broday v. Broday* (1976), 43 Ill. App. 3d 628, 357 N.E.2d 128; *Kohn v. Kohn* (1974), 21 Ill. App. 3d 117, 315 N.E.2d 52.

was unanimity as to the standard to be applied, and that standard is as set forth above.

The *Swanson* decision does not represent a radical departure from prior decisions. It is still incumbent upon the court to consider *both* the needs of the children *and* the ability of the former spouses to pay when considering a petition to increase child support. But, instead of marching in step to some precise equation of percentage change, the court considers the children's needs as ranging from the bare necessities to the practical, to the useful, to the luxurious. Similarly, the court considers whether the means of each spouse has changed absolutely, has changed relative to the other, and has changed relative to the children's needs. The court must then accommodate, or adapt, or harmonize all these considerations to determine whether an increase in support is justified. Child support payments must necessarily reflect a balance of the intensity of the child's need with the ability of the parents to provide for that need. When a material change has occurred creating a substantial imbalance between the child's needs and the parent's support capabilities, then the Marriage and Dissolution of Marriage Act as well as the *Swanson* decision requires modificaton. Ill. Rev. Stat. 1977, ch. 40, par. 510(a).

In a recent decision, *Sullivan v. Sullivan* (1978), 57 Ill. App. 3d 958, 961, 373 N.E.2d 829, we applied the flexible *Swanson* standard while acknowledging the vitality of the *Kelleher* requirement that the court consider both the needs of the children and the ability of the parents to pay. The party in *Sullivan* petitioning for an increase in child support payments demonstrated an increase in the needs of the children with evidence of "a variety of expenses including specific dollar amounts for some items and estimates for others." In addition, evidence was presented that the contributing parent's gross income had increased from $17,700 per year to $50,550 per year, while the custodial parent took home only $114 per week. Based on this proof, we held that "a material change in circumstances has occurred since the entry of the prior order and the trial court abused its discretion in denying * * * additional child support * * *." (*Sullivan v. Sullivan* (1978), 57 Ill. App. 3d 958, 963, 373 N.E.2d 829, 833.) A substantial imbalance required additional child support.

■■ ■ In the case at bar, the court heard evidence that appellant-respondent's income had increased from $27,375 per year to $34,600 per year, while the appellee-petitioner took home only $70 per week. Also, the court heard evidence that the children's expenses, particularly for educational and medical needs, had increased by significant amounts. The court considered both the needs of the children and the ability of the parents to pay, thus satisfying *Kelleher*, and found that material changes in circumstances had occurred creating a substantial imbalance, thus satisfying *Swanson*. We do not believe the trial court erred in

awarding an increase in support payments in light of the evidence. Nor did the trial court err in failing to consider the income of appellee-petitioner's second husband. "[T]he financial status of a divorced parent's current spouse should not be considered in determining the ability of that spouse to fulfill his or her duty to support." *Robin v. Robin* (1977), 45 Ill. App. 3d 365, 372, 359 N.E.2d 809, 814.

The third error alleged in appellant-respondent's appeal is that the trial court abused its discretion in awarding appellee-petitioner attorney fees on post-decree matters and for defense of an appeal. An excellent discussion of this topic appears in 66 Ill. B.J.568 (1978). Therein the author identifies *White v. White* (1976), 41 Ill. App. 3d 758, 763, 354 N.E.2d 486, among the leading cases on the subject of attorney fees in post-decree matters. In *White* the court held it was permissible to award fees for "expenses of appeal for such post-decree matters as change of custody or other modifications of the divorce decree." The rule was qualified, however, in that such fees are not to be awarded prospectively. While the awarding of attorney fees for the prosecution or defense of an appeal is proper, there is not statutory authority for such an award to be granted prospectively. (*Zalduendo v. Zalduendo* (1977), 45 Ill. App. 3d 849, 360 N.E.2d 386.) Prior cases to the contrary are not dispositive, because statutory authority on which those cases relied has been deleted with the new Illinois Marriage and Dissolution of Marriage Act.[2]

■■ In the instant case, the trial court's order of April 25, 1978, awarded the appellee-petitioner "the sum of $180 for attorney fees * * * representing services to date." We hold that such an award is not for prospective services, and thus without statutory authority, but rather is an award for services already rendered in defense of an appeal from a post-judgment order as permitted by law. (Ill. Rev. Stat. 1977, ch. 40, par. 508(a)(3).) The trial court did not exceed its authority by awarding attorney fees for services already rendered on a pending appeal.

■■ We also hold that there was a sufficient evidentiary foundation to support the trial court's award of attorney fees in the post-decree proceeding. The record provides a thorough itemization of time expended and work done by the attorney for the appellee-petitioner. This itemization, in conjunction with the experience of the trial judge, would provide a sufficient evidentiary foundation for the award. It is not error for the court to use the knowledge and experience he has acquired in the discharge of professional duties as to the value of legal services. (*Welsh v. Welsh* (1976), 38 Ill. App. 3d 35, 347 N.E.2d 512.) And finally, the determination concerning allowance of attorney fees in a post-decree proceeding to modify provisions of a divorce decree rests in the sound

---

[2] See Ill. Rev. Stat. 1977, ch. 40, par. 16, as amended by Pub. Act 79—1360 effective October 1, 1976, and subsequently repealed effective October 1, 1977.

discretion of the trial court and will not be disturbed on review absent an abuse of discretion. (*Gray v. Gray* (1978), 57 Ill. App. 3d 1, 372 N.E.2d 909.) The statute permits an award of a "reasonable amount" after "considering the financial resources of the parties." (Ill. Rev. Stat. 1977, ch. 40, par. 508(a).) We cannot say that this award is unreasonable considering the modest resources of appellee-petitioner and the generous income of appellant-respondent.

■■ Appellant-respondent's final contention on appeal is that the trial court erred by refusing to allow a motion to dismiss the petition which initiated this proceeding because the claims of Brenda Sharp, age 20, were not brought in her own name and person. The Illinois Marriage and Dissolution of Marriage Act provides for modification of a judgment respecting support in an action initiated by a "party." (Ill. Rev. Stat. 1977, ch. 40, par. 510.) Sue Sharp Elliott is clearly a "party" to the prior dissolution proceeding, and we hold that she may properly initiate the subsequent proceeding to modify. We would hasten to add what we do not hold. We do not hold that the proceeding for modification may be initiated only by one of the former spouses to the exclusion of others. The court may, in a dissolution proceeding, join additional parties necessary and proper for the exercise of its authority. (Ill. Rev. Stat. 1977, ch. 40, par. 403(d).) The court cannot enter a judgment of dissolution until provision is made for child custody. (Ill. Rev. Stat. 1977, ch. 40, par. 401(3).) And, custody cannot be adjudicated unless the child, by his guardian or next friend, is a party. (Ill. Rev. Stat. 1977, ch. 40, par. 601(e).) We are not today faced with the question of whether Brenda Sharp might have brought this action in her own name and person and consequently we need not make a determination of that question.

■■ While this case was on appeal, the appellant-respondent filed a motion to strike appellee-petitioner's brief because the brief included a document not offered or admitted into evidence. While the objectionable document was referred to a minimum of three times in the proceedings, it was never admitted into evidence. In appellee-petitioner's answer to the motion it is suggested that the document was included to aid this court in a better understanding of the trial proceedings. Such an inclusion is permissible. In *Knutson v. Chicago & Northwestern Ry. Co.* (1948), 333 Ill. App. 323, 77 N.E.2d 450, the court had before it a similar motion as here taken with the case and the motion was denied. There, an exhibit not admitted into evidence was permitted in the brief on appeal to give the court a better idea of facts and circumstances testified to at trial. We believe the facts before us are sufficiently similar and the motion is denied.

After careful consideration of the record and briefs of counsel, and for the reasons above stated, it is our opinion that the circuit court should be affirmed. We note, however, that the order as signed contains a

typographical error as explained in appellee-petitioner's brief. The weekly support figure should be $133.72 weekly, not $155.25. We further note that in the trial court order of April 25, 1978, the appellee-petitioner's request for attorney fees was reserved by the trial court for future consideration. We therefore remand the case to the circuit court with instructions to make the changes necessary in the previous order as a result of the typographical oversight and with instructions to consider the matters reserved in the April 25 order.

Affirmed and remanded with directions.

BARRY, P. J., and STOUDER, J., concur.