NOTICE

Decision filed 01/28/08. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-06-0660

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

In re MARRIAGE OF                          ) Appeal from the
                                           ) Circuit Court of
CAROL HOPWOOD, now known as                ) Montgomery County.
Carol Williams,                            )
                                           )
    Petitioner-Appellant,                  )
                                           )
and                                        )  No. 97-D-174
                                           )
TIM HOPWOOD,                               ) Honorable
                                           ) Kathleen P. Moran,
    Respondent-Appellee.                   ) Judge, presiding.
_____

PRESIDING JUSTICE STEWART delivered the opinion of the court:

This is an appeal from the trial court's denial of a petition filed by Carol Williams seeking to hold Tim Hopwood in contempt for failing to pay a debt assigned to him in the dissolution of their marriage. The trial court held that Carol lacked standing to enforce the payment of the debt since she has incurred no liability for the debt. We affirm.

BACKGROUND

On February 18, 1998, the circuit court of Montgomery County, Illinois, entered a judgment of the dissolution of the parties' marriage. The judgment ordered Tim to pay and to discharge numerous debts, including a debt to Peoples Bank & Trust of Pana (Peoples Bank) in the approximate amount of $28,000. The judgment, incorporating the parties' marital settlement agreement, provided:

"20. Respondent is ordered to pay and to discharge the following debts (balances approximate), by making monthly payments in February[] 1998 and in each calendar month thereafter until each such debt has been fully paid and discharged, his

1

monthly payment to be not less than specified below:

* * *

D.  People's [*sic*] Bank of Pana, $28,000.00 at $300.00 per month ***.

*** Respondent is ordered and directed to save and hold Petitioner harmless with respect to the debts identified in this Paragraph 19 [*sic*]."

On October 15, 2005, Carol filed a multicount petition for a rule to show cause alleging that Tim had failed to comply with the judgment in various respects.  In count IV of the petition Carol alleged that Tim had failed to pay the $28,000 loan to Peoples Bank, and Carol requested the court to hold Tim in contempt, enter a judgment against him and in favor of her in the unpaid amount of the loan plus interest, and order him to pay her attorney fees.

On August 14, 2006, the parties appeared for a hearing on all the pending postjudgment petitions.  The parties announced that all the issues had been settled except count IV of Carol's petition, and the court conducted an evidentiary hearing upon that count.  The evidence presented was entirely undisputed.

During the parties' marriage, they incurred the loan to Peoples Bank, and Dale Williams, Carol's father, had guaranteed that loan.  After the dissolution, Tim failed to pay the loan.  Peoples Bank notified Dale that his guarantee would be enforced.  In order to preserve his credit, Dale paid Peoples Bank $27,750.50 to extinguish the debt.  Subsequently, Dale filed suit against Tim in the amount he paid on the guarantee, but he voluntarily dismissed that suit before Carol filed this action.  Prior to the hearing, Carol had not been required to pay any amount on the debt, and her father had not filed suit against her or demanded that she make any payment on the debt.

Tim argued in the trial court that Carol's petition should be dismissed because she lacked standing to enforce the payment of the debt to her father since she had suffered no loss or liability as a result of Tim's failure to pay.  Specifically, Tim argued that the

2

provisions of the judgment created an obligation for Tim to indemnify Carol from liability for the debt and that since Carol had suffered no liability, no cause of action for indemnification had accrued. Tim asserted that Carol was, in effect, asserting her father's claim, since there was no claim she could assert on her own behalf.

Carol argued that the evidence was undisputed that Tim had failed to pay the debt and that she should be able to enforce the judgment regardless of whether she had been called upon to pay the debt. Carol asserted that to hold otherwise would require her father to file suit against her for the sole purpose of fixing liability against her, which she argued would be an unnecessary additional proceeding in order to enforce the debt against Tim. Carol admitted that the purpose of her action was to obtain a repayment for her father, and she asserted that she would consent that any order require that any payment be made directly to him.

On August 21, 2006, the court ruled:

"Since the debt has been paid, the Court believes that Carol Williams lacks standing to raise this issue. Clearly, Tim Hopwood has a moral obligation to repay his former father-in-law; however, this is not an obligation that Carol Williams can enforce through a contempt. Since she has no obligation to pay the bank, the cause is moot."

Carol filed two separate postjudgment motions, both of which were denied on November 21, 2006. Carol filed a timely notice of appeal.

ANALYSIS

It is clear that when Dale paid the debt to Peoples Bank, he became subrogated to the rights of the bank against both Tim and Carol. "The doctrine of subrogation allows a person who, pursuant to a legal liability, is compelled to pay an obligation of another to obtain reimbursement from the party who is primarily liable." *In re Marriage of Milliken*, 199 Ill. App. 3d 813, 819, 557 N.E.2d 591, 595 (1990). At the time of the hearing in this case,

3

however, Dale had not enforced his right of subrogation against Tim or Carol. Thus, the issue before this court is whether any cause of action has accrued to Carol that would allow her to enforce Tim's obligation to pay the debt. As phrased by the trial court, we must determine whether Carol has "standing" to pursue contempt proceedings against Tim. This is a question of law based upon undisputed facts; therefore, our standard of review is *de novo*. *Boxdorfer v. DaimlerChrysler Corp.*, 339 Ill. App. 3d 335, 339, 790 N.E.2d 391, 394 (2003).

We have found surprisingly little authority explaining the circumstances under which a party to a dissolution of marriage may enforce the obligation of the other party to pay a joint debt. Consequently, we will attempt to clearly set forth the nature of an order to indemnify a party from a debt.

When one party is ordered to pay a joint debt in a dissolution proceeding, the party ordered to pay the debt (the indemnitor) incurs an obligation to indemnify the other party (the indemnitee) from any obligation on the debt. By the terms of the judgment, Tim (the indemnitor) is obligated to indemnify Carol (the indemnitee) from any obligation on the debt to Peoples Bank, which by subrogation became a debt to Dale. Although this indemnity was created by a court order, it is analogous to a contract of indemnity. *Diaz v. Diaz*, 83 Ill. App. 3d 341, 343, 403 N.E.2d 1219, 1220 (1980).

An indemnity contract may indemnify against (1) loss or damage or (2) liability. See *Diaz*, 83 Ill. App. 3d at 343, 403 N.E.2d at 1220 (quoting 41 Am. Jur. 2d *Indemnity* §1, at 687 (1968)). "Actions to enforce the terms of an indemnity agreement accrue at different times, depending on whether the agreement covers loss or liability ***. *** [I]ndemnification obligations generally accrue only on an event-fixing liability, rather than on preliminary events that eventually may lead to liability[] but have not yet occurred." 41 Am. Jur. 2d *Indemnity* §23, at 442 (2005). "A cause of action on a contract indemnifying

4

against loss or damage does not arise until the indemnitee has actually incurred loss. Therefore, the obligation to indemnify arises at the time of payment of the underlying claim, the payment of a judgment on the underlying claim, or payment in settlement of an underlying claim." 41 Am. Jur. 2d *Indemnity* §24, at 443 (2005). "Where the contract is one of indemnity against liability, an action may be brought as soon as the liability is incurred. Where there is a promise to indemnify against liability, and not merely against loss or damage, the obligation of the indemnitor to pay arises when the liability of the party seeking indemnity is established, and the party seeking indemnity need not prove that he or she has made payment." 41 Am. Jur. 2d *Indemnity* §25, at 443 (2005). Thus, "[i]t is clear that a cause of action on an indemnity agreement does not arise until the indemnitee either has had a judgment entered against him for damages[] or has made payments or suffered actual loss." *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179, 199, 538 N.E.2d 530, 539 (1989).

In the instant case, the court ordered Tim to pay and discharge the $28,000 debt to Peoples Bank by making monthly payments until the debt has been fully paid and discharged. The judgment further provides that Tim is ordered to "save and hold Petitioner harmless" from the debt. "An indemnity agreement is to be construed as any other contract, and under the rules of contract construction, the intention of the parties is the paramount concern." *Charter Bank v. Eckert*, 223 Ill. App. 3d 918, 925, 585 N.E.2d 1304, 1310 (1992). " 'A single contract may *** indemnify against both actual loss or damage and liability.' " *Diaz*, 83 Ill. App. 3d at 343, 403 N.E.2d at 1220 (quoting 41 Am. Jur. 2d *Indemnity* §1, at 687 (1968)).

We construe the terms of the parties' marital settlement, as ordered by the court, to require Tim to indemnify Carol from both loss and liability. There is no dispute that Tim failed to pay the debt to Peoples Bank. Thus, if Carol had been required to pay any portion

5

of that debt, a cause of action would have accrued to her pursuant to Tim's obligation to indemnify her against loss. Likewise, if liability for the debt became fixed against Carol, by judgment or settlement, a cause of action would have accrued to her pursuant to Tim's obligation to indemnify her against liability. At this point, however, Carol has sustained neither loss nor liability. As a result, no cause of action has accrued in her favor, and the trial court was correct in denying her claim.

The doctrine of standing allows courts to cull their dockets to preserve for review only adversarial disputes capable of resolution by judicial decision. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 488, 524 N.E.2d 561, 572 (1988). Standing requires an injury to a legally cognizable interest. *Village of Chatham v. County of Sangamon*, 216 Ill. 2d 402, 419, 837 N.E.2d 29, 39 (2005). "The claimed injury, whether actual or threatened, must be distinct and palpable, fairly traceable to the defendant's actions, and substantially likely to be prevented or redressed by the grant of the relief requested." *Village of Chatham*, 216 Ill. 2d at 419-20, 837 N.E.2d at 40. In determining whether a plaintiff has standing, the court must determine whether the party will benefit from the relief granted, because the plaintiff must "assert his own legal rights and interests, instead of basing his claim for relief upon the rights of third parties." *Amtech Systems Corp. v. Illinois State Toll Highway Authority*, 264 Ill. App. 3d 1095, 1103, 637 N.E.2d 619, 624 (1994).

In the instant case, Carol cannot show an injury to a legally cognizable interest. While the injury for which she is claiming relief can be traced to Tim's failure to pay the debt, it is not an injury to her because she did not pay the debt and no one is seeking payment from her. Carol is not asserting her own legal right and interest but, rather, is basing her claim for relief upon the rights of her father. Thus, Carol lacks standing to raise the issue because the injury for which she seeks relief will not be redressed by entering a judgment in her favor.

6

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Montgomery County is affirmed.

Affirmed.

CHAPMAN and DONOVAN, JJ., concur.

NO. 5-06-0660

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| CAROL HOPWOOD, now known as | ) | Montgomery County. |
| Carol Williams, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 97-D-174 |
| | ) | |
| TIM HOPWOOD, | ) | Honorable |
| | ) | Kathleen P. Moran, |
| Respondent-Appellee. | ) | Judge, presiding. |

---

**Opinion Filed**:    January 28, 2008

---

**Justices**:    Honorable Bruce D. Stewart, P.J.

Honorable Melissa A. Chapman, J., and
Honorable James K. Donovan, J.,
Concur

---

**Attorney**
**for**
**Appellant**

Larry L. LeFevre, LeFevre, Oldfield, Myers, Apke & Payne Law Group, Ltd., 303 South Seventh, Box 399, Vandalia, IL 62471

---

**Attorney**
**for**
**Appellee**

Barbara Adams, Barbara Adams, P.C., 109 South Main Street, P.O. Box 38, Hillsboro, IL 62049

---